IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| CHATTERY INTERNATIONAL, INC., *et al.*, | * |
| Plaintiffs – Counter-Defendants, | * |
|  | * |
| v. | *   CIVIL NO.: WDQ-10-2236 |
| JOLIDA, INC., *et al.*, | * |
| Defendants – Counter-Plaintiffs. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Chattery International, Inc. ("Chattery") and Shanghai Shenda Sound Electronic Co., Ltd. ("Shenda") (collectively the "Shenda parties") sued JoLida, Inc. ("JoLida") for unauthorized use and registration of a trademark, and other claims. JoLida counterclaimed against Chattery, Shenda, and Jing Guo Chen, Chattery's chairman and chief executive officer ("CEO"), for trademark infringement, and other claims. For the following reasons, the Shenda parties' motion to amend the complaint will be granted in part, and denied in part.

I.    Background[1]

In December 1983, cousins Michael Allen and Huang Hong-Sheng and others incorporated JoLida in Maryland.[2]   Countercl. ¶ 9.   Allen is its president and CEO.   Allen Decl. ¶ 2.   JoLida primarily sold China-manufactured vacuum tubes used in electronics.   Countercl. ¶ 11.   In December 1986, JoLida began selling products using an "X Marks the Spot" design trademark in conjunction with a "JOLIDA" word trademark:



*Id.* ¶ 10.

In 1993, JoLida began designing amplifiers that use vacuum tubes ("tube amplifiers").[3]   *Id.* ¶¶ 12-13.   In 1994, JoLida began purchasing vacuum tubes manufactured by Shuguang Tube.   Allen Decl. ¶ 6.   JoLida applied to the United States Patent and Trademark Office ("USPTO") in 1994 to register the trademark "S.G. JOLIDA."   *Id.*; Kamarei Decl., Ex. 1.   However, JoLida

---

[1] A motion to amend pleadings that may be futile is treated as if the opposing party has moved to dismiss; the well-pled allegations in the proposed amended complaint are accepted as true.   *See United States ex. Rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] "JoLida" combines the first names of the mothers of Hong-Sheng ("Jo" for "Joanne") and Allen ("Lida").   Countercl. ¶ 9.

[3] These amplifiers are marketed to audiophiles who believe that amplifiers that use vacuum tubes sound better than amplifiers that use transistors.   Countercl. ¶ 12.

decided not to use that trademark and abandoned its application. *Id.*; Allen Decl. ¶ 6.

In January 1995, Chattery was incorporated in Maryland. Compl. ¶ 1; Mot. for Prelim. Inj. at 4.

In 1995, JoLida began manufacturing and distributing tube amplifiers and other audio equipment to United States customers, countercl. ¶ 13, but trade journals described the products as unreliable and poorly constructed, *see, e.g., id.*, Ex. 1 at 2. In June 1996, JoLida received defective amplifiers from a manufacturer in China. *Id.* ¶ 31. In or after September 1996, JoLida's Hong-Sheng entered into a contract with Chattery's Chen, his old classmate, in which Chattery agreed to fix the amplifiers. *Id.* ¶ 33.

In November 1996, Shenda was formed in China as JoLida's subsidiary, with Chen as Shenda's manager. Mot for Prelim. Inj. 4; countercl. ¶ 34. In 1996 or 1997, JoLida began using Shenda to supply and manufacture parts for JoLida's amplifiers. *Id.*

The Shenda parties assert that sometime before May 1997, Chattery and JoLida agreed to invest $1 million in Shenda jointly (the "Joint Venture Agreement"), but JoLida did not contribute its capital share. Chen Decl. ¶ 3. The Shenda parties assert that because of JoLida's failure to contribute under the Joint Venture Agreement, Chattery and JoLida entered

3

into a new agreement on May 26, 1997 (the "1997 Agreement").
*Id.* ¶ 4; ECF No. 48, Ex. A.

The alleged 1997 Agreement is typed in Chinese on JoLida's
letter-head and includes JoLida's telex number. *Id.* A
translation of the alleged 1997 Agreement provides, *inter alia*,
that: (1) Jolida would transfer all of its shares to Chattery
for $300,000, (2) Chattery authorized Jolida to "be the sole
distributer for the United States and Europe" for Shenda's audio
products, (3) Chattery would use the JOLIDA word trademark and
the "X Marks the Spot" design trademark on Shenda's products to
improve JoLida's image in the United States, (4) Shenda owned
the trademarks it used on, and the intellectual property rights
of, the audio products it manufactured.  Compl., Ex. A at 2 ¶¶
1-2, 4-6.

In 1997, Shenda became Chattery's wholly-owned subsidiary
and ceased to be JoLida's subsidiary.  Chen Decl. ¶ 8.

On March 28, 1998, Shenda registered the "JOLIDA" word
trademark and the "X Marks the Spot" design trademark in China.
*See* Compl., Ex. A; Reply to Resp. to Mot. for Prelim. Inj. at 8.

From 1997 to 2008, Shenda manufactured audio products for
JoLida.  Mot. for Prelim. Inj. 5.  From 1997 to 2000, Shenda
operated at a loss, and Chen continued to provide capital for
the company.  Chen Decl. ¶ 10.  Shenda hired engineers and

technical staff to improve the quality of its products, and
sales increased. *Id.*

Shenda asserts that through its research it developed a
cost-effective, "unique process" for manufacturing the
amplifiers; that it kept the process secret, limiting employee
knowledge to specific components of the process and advising
employees that the process is confidential. Mot. for Leave to
Amend Ex. 2, ¶¶ 62-64.

Shenda's factory manager was Qin Zhong ("Loyal Qin").[4]  Chen
Decl. ¶ 12.  The Shenda parties assert that Loyal Qin was
"secretly conspir[ing] with JoLida to build a competing
factory," and, at Allen's request, he stole Shenda's
intellectual property, including its manufacturing designs and
configurations. *Id.*; Mot. for Leave to Amend Ex. 2, ¶ 69.

In 2003, Shenda made its first profit, and sales continued
to increase. *Id.* ¶ 11.  Its audio products for JoLida received
positive reviews and won engineering awards. *See, e.g.,*
Countercl., Ex. 1 at 4, 12.

On June 29, 2005, Loyal Qin--Shenda's factory manager--
signed a "Resolution [by Shenda's] Board of Directors" that
JoLida's trademarks belonged to JoLida in America and to Shenda
in China. *See* Countercl., Ex. 10 at 2 [hereinafter Shenda Reso-

---

[4] "Loyalqin" is the username for Qin Zhong's e-mail address.
Opp'n to Mot. for Prelim. Inj. at 11 n.4

lution].  On July 18, 2005, Loyal Qin signed a "Declaration of Responsibility" that "noted that the name of JoLida is an exclusive trademark name owned by JoLida, Inc." *See* Countercl., Ex. 11.

On September 19 and 20, 2005, JoLida applied to register the "X Marks the Spot" design trademark and the "JOLIDA" word trademark (collectively, the "JoLida Trademark") with the USPTO. Countercl. ¶¶ 18, 20; *id.*, Exs. 3, 5.  In 2006 and 2007, the USPTO granted JoLida's applications, making JoLida the registrant of the JoLida Trademark.  *Id.*

On March 16, 2006, Loyal Qin signed a document stating that JoLida owned certain legal records allowing it to sell audio equipment in Europe, and Shenda could not use or transfer those records.  *See* Countercl., Ex. 12.

On January 10, 2007, JoLida opened a factory in China, JoLida Shanghai Co. Ltd. ("JoLida Shanghai"), and began to transfer the manufacturing process there from Shenda.  Mot. for Prelim. Inj. 5.  Loyal Qin left Shenda to work for JoLida Shanghai.  Chen Decl. ¶ 12.  JoLida asserts that it created JoLida Shanghai to take control of its products because "the quality of Shenda's manufacturing began to deteriorate."  Mot. for Prelim. Inj. 5; Countercl. ¶ 36.  The Shenda parties assert that Shenda was cut out because profits were increasing, and Loyal Qin stole Shenda's designs and configurations to use at

JoLida Shanghai.  Opp'n to Mot. for Prelim. Inj. 11; Chen Decl. ¶ 12.

On April 3, 2007, JoLida obtained international registration for the JoLida word trademark.  *Id.*, Ex. 4.  In February 2008, JoLida stopped ordering from Shenda.  *See* Countercl. ¶¶ 54-55.

On September 5, 2008, the Shenda parties sued JoLida Shanghai in China, seeking to shut down the factory and/or enjoin JoLida from using the JoLida trademark in violation of the 1997 Agreement.  Countercl. ¶ 63; Answer to Countercl. ¶ 63. JoLida asserts that the Chinese court "found in favor of JoLida Shanghai"; the Shenda parties assert that the court found that JoLida "was not allowed to mark [its] goods with Shenda's JOLIDA mark."  *Id.*; Countercl. ¶ 63.

On March 31, 2010, the Shenda parties sued JoLida in the Circuit Court for Baltimore City for breach of contract, false designation of origin under the Lanham Act, and related claims (the "Baltimore City Case").  ECF No. 36, Ex. 1.  On June 21, 2010, JoLida and the Shenda parties stipulated to a dismissal of that case for improper venue.  Opp'n to Mot. to Remand Ex. 2.

On June 21, 2010, the Shenda parties filed a complaint against JoLida in the Circuit Court for Howard County (the "Howard County Case") that was largely identical to the Baltimore City Case.  *Compare* Compl. *with* ECF No. 14 Ex. 1.  On August 13,

7

2010, JoLida removed the Howard County Case to this Court.   ECF
No. 1.

On August 20, 2010, JoLida counterclaimed against the
Shenda parties in this Court for trademark infringement,
tortious interference with economic relations, civil conspiracy,
and related claims. [5]   ECF No. 9.   On March 11, 2011, the Shenda
parties moved for leave to file an amended complaint.   ECF No.
49.   On March 23, 2011, the Court issued an Order resolving the
parties' earlier motions.   ECF No. 51.

II.  Analysis

Under Fed. R. Civ. P. 15(b), a party may amend its pleading
if the opposing party gives written consent, or the Court
permits the amendment.   The Court will allow amendment when
justice requires, and may consider such factors as prejudice to
the other parties and whether amendment would be futile.
*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)
(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Leave to amend will only be denied as futile when the
amended motion would not survive a motion to dismiss. *United*
*States ex. Rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d
370, 376 (4th Cir. 2008).   The Court thus determines futility

---

[5] In its counterclaim, JoLida impleaded Marc Prylli, Shenda's
marketing and overseas manager, alleging cybersquatting.   ECF
No. 9.   The Court dismissed the claim against Prylli for lack of
personal jurisdiction.   ECF No. 51.

under the standard of Fed. R. Civ. P. 12(b). *Id.* Under Rule
12(b), the Court will consider the law that applies to the claim
if it can make that determination on the pleadings.[6] *See
Johnson*, 785 F.2d at 510-11.[7]

    A.   The Trade Secret Claim

    JoLida contends that the Shenda parties failed to state a
proposed claim under the Maryland Uniform Trade Secrets Act
("MUTSA"). Opp'n to Mot. for Leave 4.

    The MUTSA imposes civil liability on, and authorizes
injunction of, intentional misappropriation of trade secrets.[8]

---

[6] Federal courts with supplemental jurisdiction over a state law
claim apply the choice of law rules of the forum state. *Klaxon
Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

[7] Although *Johnson* provides general insight on granting leave to
amend the pleadings, its standard of "deni[al] on the ground of
futility when the proposed amendment is *clearly insufficient or
frivolous* on its face," 785 F.2d at 510 (emphasis added), has
been superseded. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009
redefined the standard for dismissal under Fed. R. Civ. P.
12(b)(6), which governs the Court's futility determination. *See
Wilson*, 525 F.3d at 376.

[8] Misappropriation of a trade secret is:

    (1) Acquisition of a trade secret of another by a
    person who knows or has reason to know that the trade
    secret was acquired by improper means; or

    (2) Disclosure or use of a trade secret of another
    without express or implied consent by a person who:
    (i) Used improper means to acquire such knowledge of
    the trade secret; or (ii) at the time of disclosure or
    use, knew or had reason to know that the person's
    knowledge of the trade secret was: . . . (2) Acquired
    under circumstances giving rise to a duty to maintain

Md. Code Ann. Comm. Law §§ 11-1202; 11-1203; *see also Systems 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. Md. 2001). The complainant must allege that: (1) it has taken reasonable steps to protect the secrecy of information that derives economic value from its secrecy, and (2) the defendant acquired that information "through improper means." *Systems 4*, 8 F. App'x at 200.[9]

The amended complaint alleges that the Shenda parties took reasonable steps—limiting employee knowledge and informing employees of confidentiality—to protect a trade secret—the manufacturing process—, Am. Compl. ¶¶ 62-66, and that JoLida and Allen gained access to that information by improper means—

---

    its secrecy or limit its use; or (3) Derived from or
    through a person who owed a duty to the person seeking
    relief to maintain its secrecy or limit its use . . .

Md. Code Ann. Com. Law § 11-1201(c). A trade secret is:

    information, including a . . . pattern, compilation,
    program, device, method, technique, or process, that:
    (1) Derives independent economic value, actual or
    potential, from not being generally known to, and not
    being readily ascertainable by proper means by, other
    persons who can obtain economic value from its
    disclosure or use; and (2) Is the subject of efforts
    that are reasonable under the circumstances to
    maintain its secrecy.

*Id.* § 11-1201(e).

[9] "A claim under [MUTSA] raises two central inquiries: (1) whether the information at issue qualifies as a trade secret; and (2) whether an individual has actually misappropriated that information or has threatened to misappropriate it." *Lejeune*, 381 Md. At 305, 849 A.2d at 462.

recruiting a Shenda factory manager to work at JoLida's factory and provide the Shenda parties' trade secrets to JoLida and Allen, *id.* ¶¶ 67-72.  Under Maryland law, the Shenda parties have stated a claim.

JoLida argues that the proposed MUTSA claim is futile because MUTSA does not apply extraterritorially, and under Maryland choice of law principles, the Court would apply Chinese law to the claim.  Resp. to Mot. for Leave 4-6.  Both arguments rely on the premise that the misappropriation was committed in China rather than Maryland.

Maryland applies the rule of *lex loci delicti* to determine the law to apply in tort cases.  Under that rule, the court applies the law of the state "where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of America v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). Misappropriation occurs in the misappropriator's place of business, not at the location from which the information was taken. *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (interpreting MUTSA).

Assuming the truth of the allegations, the defendants, JoLida and Allen, have their place of business in Maryland, *Am. Compl.* ¶ 3, and they own a subsidiary company in China, *id.* ¶69. It is plausible that JoLida and Allen *obtained* the information when they were in Maryland even though it came from China. *See*

11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (under the standard for a motion to dismiss, complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (internal quotation marks and citations omitted)).

Therefore, Maryland law may apply to this case, and the amendment is not futile.  The Shenda parties' motion for leave to amend will be granted as to the additional claim.[10]

B.   The Addition of Michael Allen as a Defendant

JoLida argues that adding Allen as a defendant is futile because he is a proper defendant only to the MUTSA claim.  Opp'n to Mot. for Leave 14.  As discussed above, the MUTSA claim will be permitted.  JoLida does not deny that Allen is a proper MUTSA defendant.  *Id.*  If he acquired a trade secret by an improper means, he is a proper MUTSA defendant.  *See* Md. Code Ann. Comm. Law §§ 11-1201.

---

[10] JoLinda argues that the Court should decline to exercise supplemental jurisdiction over the misappropriation claim.  This argument fails because the claim is part of "the same case or controversy" as the other claims.  *See* 28 U.S.C. § 1367.  A federal court has power to hear a claim supplemental to the claim that creates jurisdiction if a plaintiff "'would ordinarily be expected to try [all of his claims] in one judicial proceeding.'"  *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 662 (4th Cir. 1998) (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  Here, the new claim relates to JoLida's alleged unfair competition with Chattery for sales of similar products, which is the subject of the third through seventh claims.  *See* Am. Compl. ¶¶ 32-73.  The Court has supplemental jurisdiction over the new claim.

Allen, as the president of a company allegedly violating 15 U.S.C. § 1125(a), is a "person" covered under the statute. *See, e.g., W.T. Rogers Co. v. Keene*, 778 F.2d 334, 337 (7th Cir. 1985) (Lanham Act suit against corporate defendant and its founder and president). He may also be a proper defendant in the common law trademark and unfair competition claims, counts four, five, and seven. *See Tedro v. Deskin*, 265 Md. 546, 550, 290 A.2d 799, 802 (1972) (corporate officers are personally liable for torts they cause the corporation to commit).

Allen may also be a proper defendant for the conversion and unjust enrichment claims, counts six and nine. The Shenda parties' proposed amendment alleges that JoLida and Allen "intentionally interfered with Shenda's property," and JoLida and Allen's actions "constitute unjust enrichment." Compl. ¶¶ 53, 59. Assuming the truth of the allegations and viewing them in the light most favorable to the Shenda parties, these counts allege that Allen, in his personal capacity, converted Shenda's intellectual property and unjustly enriched himself.

Allen is not, however, a proper defendant for the breach of contract claims because the alleged contract was between Chattery and Jolida. *See* Am. Compl. ¶¶ 21-31. "[W]hen an official or agent signs a contract for his corporation it is

13

simply a corporate act . . . *he is not personally liable* for the corporate contract unless the matter is tainted by fraud."[11]

The Shenda parties' motion for leave to amend will be granted in part, but it will be denied as to the inclusion of Allen as an additional defendant in Count One of the amended complaint.

III. Conclusion

For the reasons stated above, the Shenda parties' motion for leave to amend will be granted in part and denied in part.

_9/26/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[11] *Ferguson Trenching Co. v. Kiehne*, 329 Md. 169, 175, 618 A.2d 735, 738 (1993) (internal quotation marks and citations omitted) (emphasis added); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006) (individual who signs a contract in his corporate capacity is not a party, even if he "ma[kes] and enforce[s] contracts" for the corporation he represents).

14