IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHATTERY INTERNATIONAL,
INC., *et al.*,

      Plaintiffs –
      Counter-Defendants,

        v.                      CIVIL NO.: WDQ-10-2236

JOLIDA, INC., *et al.*,

      Defendants –
      Counter-Plaintiffs.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Chattery International, Inc. ("Chattery") and Shanghai Shenda Sound Electronic Co., Ltd. ("Shenda") (collectively the "Shenda parties") sued JoLida, Inc. ("JoLida") and Michael Allen (collectively the defendants) for unauthorized use and registration of a trademark, and other claims. JoLida counterclaimed against Chattery, Shenda, and Jing Guo Chen, Chattery's chairman and chief executive officer ("CEO"), for trademark infringement, and other claims. For the following reasons, the defendants' motion to dismiss count eight of the amended complaint will be denied.

I.   Background[1]

In December 1983, cousins Michael Allen and Huang Hong-Sheng and others incorporated JoLida in Maryland, to sell China-manufactured vacuum tubes used in electronics.[2]   ECF No. 9 ¶¶9, 11.   Allen is its president and CEO.   ECF No. 66 Attach. 3 ¶2. Its products had an "X Marks the Spot" design trademark with a "JOLIDA" word trademark ("the X mark").   ECF No. 9 ¶ 10.   In 1993, JoLida began designing amplifiers that use vacuum tubes ("tube amplifiers").[3]   *Id.* ¶¶12-13.   Initially, JoLida bought vacuum tubes made by Shuguang Tube.   Allen Decl. ¶ 6.

In January 1995, Chattery was incorporated in Maryland. ECF No. 60 ¶1; ECF No. 14 at 4.

In 1995, JoLida began manufacturing and distributing tube amplifiers and other audio equipment to United States customers, ECF No. 9 ¶13, but trade journals described the products as unreliable and poorly constructed, *see, e.g., id.*, Attach. 1 at 2.   In or after September 1996, Chattery's Chen agreed to fix

---

[1] For the motion to dismiss, the well-pled allegations in the amended complaint are accepted as true.   *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

[2] "JoLida" combines the first names of the mothers of Hong-Sheng ("Jo" for "Joanne") and Allen ("Lida").   ECF No. 9 ¶9.

[3] These amplifiers are marketed to audiophiles who believe that amplifiers that use vacuum tubes sound better than amplifiers that use transistors.   ECF No. 9 ¶12.

defective amplifiers that JoLida had received from a manufacturer in China. *Id.* ¶¶31, 33.

In November 1996, Shenda was formed in China as Chattery and JoLida's subsidiary, with Chen as Shenda's manager. ECF No. 60 ¶11; ECF No. 9 ¶34. JoLida began using Shenda to supply and manufacture parts for JoLida's amplifiers. *Id.*

In 1997, after a disagreement over investment in Shenda,[4] Shenda became Chattery's wholly-owned subsidiary and ceased to be JoLida's subsidiary. ECF No. 20 Attach. 1 ¶8.

On March 28, 1998, Shenda registered the X mark in China. *See* ECF No. 60, Ex. C.

From 1997 to 2008, Shenda manufactured audio products for JoLida. ECF No. 14 at 5. From 1997 to 2000, Shenda operated at a loss, and Chen continued to provide capital for the company. ECF No. 20 Attach. 1 ¶10. Shenda hired engineers and technical

---

[4] The Shenda parties assert that Chattery and JoLida had agreed to invest $1 million in Shenda jointly (the "Joint Venture Agreement"), but JoLida did not contribute its capital share. ECF No. 60 ¶¶11-12; ECF No. 20 Attach. 1 ¶3. The Shenda parties assert that because of JoLida's failure to contribute under the Joint Venture Agreement, Chattery and JoLida entered into a new agreement on May 26, 1997 (the "1997 Agreement"). ECF No. 60 ¶13.

The alleged 1997 Agreement provides, *inter alia*, that: (1) JoLida would transfer all of its Shenda shares to Chattery for $300,000, (2) Chattery authorized JoLida to "be the sole distributer for the United States and Europe" for Shenda's audio products, (3) Chattery would use the X mark on Shenda's products to improve JoLida's image in the United States, (4) Shenda owned the trademarks it used on, and the intellectual property rights of, the audio products it manufactured. ECF No. 60, Ex. A at 2 ¶¶1-2, 4-6.

staff to improve the quality of its products, and sales increased. *Id.*

Shenda asserts that through its research it developed a cost-effective, "unique process" for manufacturing the amplifiers; that it kept the process secret, limiting employee knowledge to specific components of the process and advising employees that the process is confidential. ECF No. 60 ¶¶62-64.

In 2003, Shenda made its first profit, and sales continued to increase. ECF No. 20 Attach. 1 ¶11. Its audio products for JoLida received positive reviews and won engineering awards. *See, e.g.,* ECF No. 9, Ex. 1 at 4, 12.

Shenda's factory manager was Qin Zhong. ECF No. 60 ¶68. The Shenda parties assert that in 2006, Zhong secretly conspired with JoLida to build a competing factory, in Shanghai and, at Allen's request, he stole Shenda's intellectual property, including its manufacturing designs and configurations. ECF No. 60 ¶¶68-71.

JoLida and "Allen covertly recruited [Zhong] to work in [JoLida] Shanghai, . . . further solicited [Zhong's] aid in recruiting other Shenda employees and providing Defendants with confidential and proprietary information misappropriated from Shenda." ECF No. 60 ¶¶68-69. They alleged that, "[u]tilizing the stolen trade secret[s] provided by [Zhong], Defendants' competing factory was soon able to manufacture stereo system at

4

the same quality and cost structure as Shenda's." *Id.* ¶71. At Allen's and JoLida's urging, Zhong allegedly brought seven other Shenda employees to JoLida Shanghai. *Id.* Finally, they alleged that JoLida and Allen "improperly took the trade secrets from [the Shenda parties] without . . . a right or privilege to do so, and used and disclosed said trade secrets in their own business." *Id.* ¶73.

On January 10, 2007, JoLida opened a factory in China, JoLida Shanghai Co. Ltd. ("JoLida Shanghai"), and transferred the manufacturing process there from Shenda. ECF No. 14 at 5. Zhong left Shenda to work for JoLida Shanghai. ECF No. 20 Attach. 1 ¶ 12. JoLida asserts that it created JoLida Shanghai to take control of its products because "the quality of Shenda's manufacturing began to deteriorate." ECF No. 14 5; ECF No. 9 ¶ 36. The Shenda parties assert that Shenda was cut out because profits were increasing, and Zhong stole Shenda's designs and configurations to use at JoLida Shanghai. ECF No. 20 at 11; ECF No. 20 Attach. 1 ¶ 12.

On April 3, 2007, JoLida obtained international registration for the JoLida word mark. *Id.*, Ex. 4. In February 2008, JoLida stopped ordering from Shenda. *See* ECF No. 9 ¶¶54-55.

On March 31, 2010, the Shenda parties sued JoLida in the Circuit Court for Baltimore City for breach of contract, false

designation of origin under the Lanham Act, and related claims.[5]
ECF No. 36, Ex. 1.  On June 21, 2010, JoLida and the Shenda
parties stipulated to a dismissal of that case for improper
venue, and the Shenda parties brought the same action in the
Circuit Court for Howard County.  ECF No. 38, Ex. 2.  On August
13, 2010, JoLida removed to this Court.  ECF No. 1.

JoLida counterclaimed against the Shenda parties in this
Court for trademark infringement, tortious interference with
economic relations, civil conspiracy, and related claims.[6]  ECF
No. 9.  On September 27, 2011, the Court allowed the Shenda
parties to file an amended complaint adding a count for
misappropriation of trade secrets, and naming Michael Allen as a
defendant in counts three through 11.  ECF No. 59.

On November 7, 2011, the defendants moved to dismiss count
eight of the amended complaint, which alleges a violation of the

---

[5] On September 5, 2008, the Shenda parties sued JoLida Shanghai
in China, seeking to shut down the factory and/or enjoin JoLida
from using the JoLida trademark in violation of the 1997
Agreement.  ECF No. 9 ¶63; ECF No. 22 ¶63.  JoLida asserts that
the Chinese court "found in favor of JoLida Shanghai"; the
Shenda parties assert that the court found that JoLida "was not
allowed to mark [its] goods with Shenda's JOLIDA mark."  ECF No.
9 ¶63.

[6] In its counterclaim, JoLida impleaded Marc Prylli, Shenda's
marketing and overseas manager, alleging cybersquatting.  ECF
No. 9.  The Court dismissed the claim against Prylli for lack of
personal jurisdiction.  ECF No. 51.

Maryland Uniform Trade Secret Act ("MUTSA").[7]   ECF No. 66.   The Shenda parties opposed the motion.   ECF No. 67.

## II.   Analysis

The defendants contend that count eight should be dismissed (1) for failure to state a claim under MUTSA, (2) pursuant to *forum non conveniens*, or (3) for failure to join a required party.   ECF No. 66.

### A.   Failure to State a Claim

#### 1.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   *Midgal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).   Although Rule eight's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.   *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d

---

[7] The defendants' request for a hearing on the motion will be denied as unnecessary.   ECF No. 69.

761, 764-65 (4th Cir. 2003).   These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly,* 550 U.S. at 557).   The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950.   "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

The MUTSA imposes civil liability on, and authorizes injunction of, intentional misappropriation of trade secrets.[8]

---

[8] Misappropriation of a trade secret is:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: (i) Used improper means to acquire such knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was: . . . (2) Acquired

Md. Code Ann. Comm. Law §§ 11-1202; 11-1203; *see also Systems 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. Md. 2001).   The complainant must allege that: (1) it has taken reasonable steps to protect the secrecy of information that derives economic value from its secrecy, and (2) the defendant acquired that information "through improper means."   *Systems 4*, 8 F. App'x at 200.[9]   Economic harm is not an element of misappropriation.   Md. Code Ann., Comm. Law § 11-1201(c).

---

> under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use . . .

Md. Code Ann. Com. Law § 11-1201(c).   A trade secret is:

> information, including a . . . pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 11-1201(e).

[9] "A claim under [MUTSA] raises two central inquiries: (1) whether the information at issue qualifies as a trade secret; and (2) whether an individual has actually misappropriated that information or has threatened to misappropriate it."   *Lejeune v. Coin Acceptors, Inc.*, 381 Md. 288, 305, 849 A.2d 451, 462 (2004).

2.   Maryland Law May Apply

The Shenda parties have alleged facts that, if proven, would lead the Court to apply Maryland law.

Maryland applies the rule of *lex loci delicti* to determine the applicable law in tort cases.[10]  Under that rule, the Court applies the law of the state "where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006).  Misappropriation occurs where the misappropriated information is received and used, not necessarily where it was taken or where the economic harm is felt. *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (interpreting MUTSA).[11]

---

[10] Federal courts with supplemental jurisdiction over a state law claim apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

[11] *See also Myung Ga, Inc. v. Myung Ga of Md., Inc.*, 2011 WL 3476828, *6 n.6 (D. Md. Aug. 8, 2011) ("The only plausible inference from the complaint is that any misappropriation (and use of the trade secrets) occurred in Maryland; Maryland law would therefore govern."); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1140 (11th Cir. 2005) ("In a trade secret misappropriation case, the *lex loci delicti* is not the place where the information was learned, but where the tortious act of misappropriation and use of the trade secret occurred." (internal quotation marks omitted)); *White Wave Int'l Labs, Inc. v. Lohan*, No. 09-1260, 2010 WL 3835873, *3 (M.D. Fla. Sept. 29, 2010) ("[T]he alleged misappropriation [under the UTSA] . . . did not take place [at the plaintiff's Florida offices, from which the information was taken].  Here, if any disclosures of Plaintiff's formula took place, it was to the Texas company that manufactures [the product using the trade secret]."  Further, the harm was not

The Shenda parties have alleged that JoLida and Allen,
Maryland residents, induced Zhong, in Shanghai, to take the
Shenda parties' trade secrets from the Shenda subsidiary
factory, disclose them to JoLida, and implement them in JoLida
Shanghai, which used the information to manufacture speakers in
its factories in Shanghai.  ECF No. 60 ¶¶68-71.  Thus, many of
the acts occurred in Shanghai, not Maryland.  *See RaceRedi*, 640
F. Supp. 2d at 666.

However, the Shenda parties have also alleged that JoLida
and Allen reside and do business in Maryland, and Zhong gave the
trade secrets to the defendants.  Accordingly, under the facts
alleged, the defendants could have acquired the information when
they were in Maryland, although the information came from
Shanghai.  In turn, they could have disclosed it to JoLida

---

felt in Florida; it was felt in Texas where the tortious acts
occurred.).

The Shenda parties contend that misappropriation occurs
where the plaintiff feels the harm of the tort, not where the
secret is disclosed or used.  ECF No. 67 at 4-5.  Harm to the
plaintiff is not an element of misappropriation.  Md. Code Ann.,
Comm. Law § 11-1201(c).  Thus, the last event required to
constitute the tort is acquisition, disclosure, or use.  *See id.*
Further, the test is where the "wrong" occurred; in a misappro-
priation claim the wrong is the loss of secrecy, not subsequent
financial harm.  *See Bledsoe v. Crowley*, 849 F.2d 639, 642 (D.C.
Cir. 1988); Md. Code Ann., Comm. Law § 11-1201(c); *Bates v.
Cook, Inc.*, 615 F. Supp. 662, 675 (M.D. Fla. 1984) (collecting
cases supporting conclusion that place where secret is
wrongfully obtained, used, or disclosed is *lex loci delicti*, not
place where injury is felt).

11

Shanghai, from Maryland.[12]   Accordingly, under both types of misappropriation, the last act necessary to complete the tort may have occurred in Maryland.[13]   *See* Md. Code Ann., Comm. Law § 11-1201(c).

Discovery is necessary before the Court can determine whether Maryland law will govern the trade secret misappropriation claim.

### 3.   MUTSA's Extraterritorial Reach is Irrelevant

The defendants' second argument, that MUTSA does not apply to extraterritorial activity, depends on the assumption that no tortious conduct occurred in Maryland.   *See* ECF No. 66 Attach. 1 at 10.   As the amended complaint alleges a tort that may have occurred in Maryland, MUTSA's extraterritorial applicability is irrelevant.

---

[12] The defendants have not identified--and the Court has not found--any reason to believe that a misappropriator's acts of acquiring and disclosing information, from one location, occurs where a third-party recipient receives the information from the misappropriator.   As acquisition and disclosure are sufficient to constitute misappropriation, the alleged use of the information elsewhere is not necessarily dispositive.   *See* Md. Code Ann., Comm. Law § 11-1201(c).

[13] The Shenda parties contend that the Court's reasoning in its Memorandum Opinion granting them leave to file the amended complaint, that misappropriation occurs at the defendant's place of business, "is largely irrelevant."   ECF No. 67 at 5.   The place of business reasoning is relevant because the defendant usually "uses" the information at its place of business.   *See, e.g.*, *RaceRedi*, 640 F. Supp. 2d at 666.   Here, the allegations may be understood to mean that the defendants obtained and disclosed the trade secrets at their Maryland headquarters.

4.    Piercing the Corporate Veil is Unnecessary

The defendants' final argument for dismissal for failure to state a claim is that the Shenda parties are asserting a claim against them "for the alleged acts of the subsidiary" and have not alleged facts to support piercing the corporate veil between it and its wholly owned subsidiary.  ECF No. 66 Attach. 1 at 10.

The plaintiffs have alleged that JoLida and Allen misappropriated trade secrets by soliciting, and obtaining from Zhong, Shenda's trade secrets.  The Shenda parties have alleged that Zhong provided JoLida and Allen with trade secrets, which JoLida and Allen then used, with Zhong, at JoLida Shanghai.  ECF No. 60 ¶¶69, 71.

Accordingly, the Shenda parties have alleged that the defendants, not their subsidiary, misappropriated the trade secrets.  *See* Md. Code Ann., Comm. Law § 11-1201(c) (misappropriation may be merely wrongfully obtaining and disclosing trade secrets; use is not necessary).  There is no need to pierce the corporate veil.  The Shenda parties have stated a claim for which relief can be granted.

B.    Forum Non Conveniens/Supplemental Jurisdiction

JoLida next contends that the Court should dismiss the case on *forum non conveniens* grounds.  ECF No. 66 Attach. 1 at 11.

A Court may dismiss an action on *forum non conveniens* grounds when (1) there is an alternative, adequate forum that is

available to all defendants, and (2) balancing the public and private interests, dismissal so that the action may be brought in a foreign jurisdiction would be more convenient than remaining in the plaintiff's choice of forum. *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).

      1.   Availability and Adequacy of Alternative Forum

Usually, an alternative forum is available when the defendants are "amenable to process" there. *Tang*, 656 F.3d at 249 (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981)). In rare circumstances, a foreign forum may be inadequate because the parties would be "deprived of all remedies or treated unfairly." *Id.* (internal quotation marks and citation omitted).

Here, the defendants have submitted an affidavit that they would not contest a suit filed in China. ECF No. 66 Attach. 3 ¶8. Accordingly, the proposed alternative forum is available. *Tang*, 656 F.3d at 250. The Shenda parties have not contended that China would be an inadequate forum. *See* ECF No. 67 at 9-10. Thus, the Court must weigh the public and private interest factors.

      2.   Private Factors

The "*forum non conveniens* doctrine is ultimately concerned with convenience, not simply the locus of the alleged wrongful conduct." *Tang*, 656 F.3d at 252. The Court considers four

factors pertaining to the private interests of the litigants:
(1) the ease of access to sources of proof; (2) compulsory
process to obtain unwilling witnesses; (3) the cost of obtaining
willing witnesses; and (4) other practical problems that affect
the ease, expeditiousness, and expense of trial. *Id.* at 249
(*quoting Piper Aircraft*, 454 U.S. at 241 n.6).

The defendants contend that all witnesses "who know[] about
the trade secrets" are in China. ECF No. 66 Attach. 1 at 14.
Thus, they argue, "evidence will need to be obtained from
Chinese citizens who worked at either or both factories." *Id.*
at 15. Further, Shenda will have to prove that it took steps to
maintain the secrecy of its designs and methods, and "the finder
of fact may . . . need to tour one or both facilities" to
understand the methods and decide whether the designs and
methods were kept secret. *Id.* The defendants add that relevant
"records, invoices, [and] bills of lading" will likely be
located in China. *Id.*

The Shenda parties counter that some of the plaintiffs and
the defendants are located in Maryland. They contend that
certain JoLida employees residing in Maryland are important
witnesses whose attendance could not be compelled in China. ECF
No. 67 at 11.

This Court cannot compel the attendance of Chinese
witnesses. *Tang*, 656 F.3d at 252. That necessary witnesses,

15

including Zhong, the defendants' alleged agent and holder of the
trade secrets, are beyond the Court's subpoena power, favors
dismissal. *Id.* As "much of the evidence will derive from
Chinese witnesses [and documents], trial in an American court
will require costly translators." *Id.* However, the defendants
recognize that the "eight or more" foreign witnesses could
testify by video deposition. ECF No. 66 Attach. 1 at 17. That
would dramatically reduce the cost of trying the case, and
eliminate the need to compel the attendance of foreign witnesses
at trial.[14]

Further, it is not clear why this claim about how JoLida
acquired the information about factory methods and technology

---

[14] The defendants rely heavily on *Tang* to justify dismissal.
Though some facts are analogous in the actions--e.g., both suits
involved Chinese factories--the convenience to the parties is
very different here.  In *Tang*, Chinese parents of more than 50
infants brought suit in the District of Maryland, individually
and on behalf of their children, against a corporation with its
principal place of business in Maryland, and its subsidiary
factory in China.  The subsidiary had manufactured and
distributed contaminated infant formula exclusively in China.
656 F.3d at 242.  The Fourth Circuit upheld dismissal of the
action for *forum non conveniens*, because the contaminated
formula was created, marketed, and consumed exclusively in
China, the home to every plaintiff.  *Id.* at 252.
  Here, by contrast, the allegedly misappropriated inform-
ation moved between Shanghai and Maryland, possibly from Shenda's
Shanghai factory, through Zhong, to Allen and others at JoLida
(in Maryland), then back to Shanghai to JoLida Shanghai to make
products that JoLida (a Maryland company) would market in the
United States, where Chattery also marketed competing products
made using the trade secrets.  ECF No. 60.  Further, unlike a
consumer product like baby formula, information is intangible
and does not necessarily have a geographic location.

would require a site visit rather than a video tour or courtroom
demonstration.

Though it is not clear at this early stage in the litiga-
tion, it appears that other evidence and witnesses will be in
Maryland, and compulsory process would be unavailable to some
witnesses either here or in China.  For example, Allen will
likely be an important witness, and the parties agree that he
does not speak Chinese, so a translator would be needed in China
as well.  ECF Nos. 67 at 11, 68 at 12.

Accordingly, the private interest factors here do not
support dismissing the action.

      3.    Public Factors

The Court considers five public interest factors: (1) the
administrative difficulties of court congestion; (2) the "local
interest in having localized controversies decided at home"; (3)
the interest in adjudication by a court familiar with the law to
be applied; (4) avoiding unnecessary conflicts of law or
problems applying foreign law; and (5) the unfairness of
burdening citizens in a disinterested forum with jury duty.
*Tang*, 656 F.3d at 249 (*quoting Piper Aircraft*, 454 U.S. at 241
n.6).

Neither party has directly addressed the first public
interest factor.  As discussed above, some of the alleged
tortious conduct occurred in Maryland, and some in China.  *See*

17

Part II.A.2, *supra*. Accordingly, the second and fifth factors are neutral.

The defendants' argument that the public interests factors favor dismissal is primarily based on their assumption that Chinese law will apply to the trade secrets claim. ECF No. 66 Attach. 1 at 16. As discussed above, Maryland law may apply to that claim. *See* Part II.A.2, *supra*. Accordingly, the third and fourth public interest factors may not favor dismissal.

As neither the private nor public factors support dismissal, the Court will not dismiss for *forum non conveniens*.

4.   Supplemental Jurisdiction

Alternatively, JoLida argues that the Court should decline to exercise supplemental jurisdiction over the misappropriation claim. As the Court held when it granted leave to file the amended complaint, this argument fails because the claim is part of "the same case or controversy" as the other claims. *See* 28 U.S.C. § 1367. If a plaintiff "'would ordinarily be expected to try [all of his claims] in one judicial proceeding,'" a federal court may hear claims that supplement the claim that creates jurisdiction. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 662 (4th Cir. 1998) (*quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The MUTSA claim relates to JoLida's allegedly unfair competition with Chattery for sales of similar products, which is the subject of

18

the third through seventh counts.  *See* ECF No. 60 ¶¶32-73.  The
Court has supplemental jurisdiction.

    C.    Necessary Party

    Finally, the defendants contend that the Court should
dismiss count eight under Fed. R. Civ. P. 12(b)(7) because
JoLida Shanghai is a required party but cannot be joined.[15]  ECF
No. 66 Attach. 1 at 21.

        1.    Standard of Review

    Under Fed. R. Civ. P. 12(b)(7), the Court may dismiss an
action if a necessary party cannot be joined and is indispen-
sable to resolution of the action.  The Court first considers
whether an absent party is necessary under Fed. R. Civ. P.
19(a).[16]  If so, the Court considers whether joinder is possible.
If joinder is possible, the Court will order that the party be
joined.  If joinder is not possible, the Court considers, under

_____

[15] The Court lacks personal jurisdiction over JoLida Shanghai.
ECF No. 66 Attach. 1 at 23.

[16] Under Fed. R. Civ. P. 19(a)(1), a party is necessary to the
action if:

    (A) In [its] absence the court cannot accord complete
    relief among the existing parties; or
    (B) [It] claims an interest in the subject of the
    action and is so situated that disposing of the action
    without it may:
    (i) . . . impair or impede [its] ability to protect
    the interest; or
    (ii) leave an existing party subject to a substantial
    risk of incurring double, multiple, or otherwise
    inconsistent obligations because of the interest.

Rule 19(b),[17] whether to proceed without the party or dismiss the action. *Owens-Ill., Inc. v. Meade*, 186 F.2d 435, 440 (4th Cir. 1999). A party cannot be indispensable unless it is necessary, but not all necessary parties are indispensable. *Schlumberger Indus. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1996).

The defendants bear the burden of showing that a missing party is necessary and indispensable. *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007). The decision to dismiss is in the Court's sound discretion, and it will order dismissal only when "serious prejudice or inefficiency will result" from hearing the action without the party. *Id.; RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995), *cited in Owens-Ill.*, 186 F.2d at 441.

2.   JoLida Shanghai is Not a Necessary Party

The defendants contend that JoLida Shanghai hired former Shenda employees and implemented the trade secrets at JoLida

---

[17] Under Fed. R. Civ. P. 19(b), when a necessary party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties." The Court considers whether:

(1) Judgment will prejudice the absent or existing parties;
(2) Any prejudice can be reduced or avoided;
(3) Judgment will be adequate without the absent party;
(4) The plaintiff will have an adequate remedy if the action is dismissed.

Shanghai, and an adverse decision by this Court would affect
JoLida Shanghai's business, but a favorable decision would not
prevent the Shenda parties from suing it over the same
transactions.  ECF No. 66 Attach. 1 at 23.  The Shenda parties
counter that their allegations only relate to JoLida and Allen,
and do not involve JoLida Shanghai.  ECF No. 67 at 15.

Joinder is necessary when the subsidiary's conduct is a
subject of the suit, making the subsidiary more than merely "a
key witness."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite
Aid of S.C., Inc.*, 210 F.3d 246, 251-52 (4th Cir. 2000).

The Shenda parties have alleged that JoLida and "Allen
covertly recruited [Zhong] to work in [JoLida] Shanghai, . . .
further solicited [Zhong's] aid in recruiting other Shenda
employees and providing Defendants with confidential and
proprietary information misappropriated from Shenda."  ECF No.
60 ¶¶68-69.  They have alleged that, "[u]tilizing the stolen
trade secret[s] provided by [Zhong], Defendants' competing
factory was soon able to manufacture stereo system at the same
quality and cost structure as Shenda's."  *Id.* ¶71.  At Allen and
JoLida's urging, Zhong allegedly brought seven other Shenda
employees to JoLida Shanghai.  *Id.*  Finally, they have alleged
that JoLida and Allen "improperly took the trade secrets from
[the Shenda parties] without . . . a right or privilege to do

Case 1:10-cv-02236-WDQ   Document 70   Filed 04/24/12   Page 22 of 23

so, and used and disclosed said trade secrets in their own business." *Id.* ¶73.

The Shenda parties have alleged no wrongdoing by JoLida Shanghai. JoLida Shanghai did not misappropriate trade secrets unless it (1) knew or should have known they were acquired by improper means, (2) used improper means to learn the trade secrets, or (3) knew that Zhong had wrongfully disclosed the trade secrets to JoLida. Md. Code Ann., Comm. Law § 11-1201(c). The amended complaint does not allege that JoLida Shanghai knew the trade secrets were improperly obtained, which would make it complicit in the asserted misappropriation. *See* ECF No. 60 ¶¶67-74.

As JoLida Shanghai's conduct has not been pled in the amended complaint, it is no more than "a key witness" in this action. *Nat'l Union Fire Ins. Co.*, 210 F.3d at 251-52. A finding that JoLida misappropriated the trade secrets would not prevent JoLida Shanghai from arguing that it was not aware that the information was misappropriated, and would not be liable in a future suit. Accordingly, the Court may resolve the disputes among the parties without JoLida Shanghai, whose ability to protect any interest it has in the information will not be impaired; JoLida Shanghai is not a necessary party. *See* Fed. R. Civ. P. 19(a).

22

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss count eight of the amended complaint will be denied.

_4/23/12_
Date

William D. Quarles, Jr.
United States District Judge